[861 NE2d 98, 828 NYS2d 283]

Nitza Keane, Appellant, v Frank M. Keane, Respondent.

Decided December 21, 2006

**POINTS OF COUNSEL**

*Nitza Keane,* appellant pro se. I. Appellant's rights were deprived under the 14th Amendment of the Constitution. (*Mat-*

*ter of Tamara B. v Pete F.,* 220 AD2d 318; *Matter of Ballroom Prods. v Abrams,* 96 AD2d 1099; *Matter of Deutsch v Deutsch,* 59 AD2d 741; *Belesi v Connecticut Mut. Life Ins. Co.,* 272 AD2d 353, 95 NY2d 886.) II. The *Grunfeld* rule was erroneously applied to the facts of this case. (*Grunfeld v Grunfeld,* 94 NY2d 696.) III. The double-dipping fallacy viewed by neighboring states should be relevant to New York because of its unfairness. IV. Respondent's incredible and unbelievable testimony regarding the Madison, Connecticut property should be denied as a matter of law. V. There was legal error regarding attorneys' fees for appellant. VI. The court did not fail to award respondent his separate property. VII. The determination involved as to 9 Bayview Place, Madison, Connecticut is reviewable as a matter of law. VIII. Appellant was denied tax benefits, while respondent received all tax benefits under equitable distribution as a matter of law. IX. A miscalculation by the trial court resulted in appellant receiving less than her entitled distributive award.

*Emanuel A. Towns,* Brooklyn, for appellant. I. Respondent's trial testimony on the 9 Bayview Place dispute was incredible as a matter of law. (*Loughlin v City of New York,* 186 AD2d 176; *Sullivan v Pilevsky,* 281 AD2d 410; *Carr v Burnwell Gas of Newark, Inc.,* 23 AD3d 998.) II. Respondent's trial counsel's false representations were prejudicial, as a matter of law. (*Schindler v Issler & Schrage,* 262 AD2d 226; *Heller v Louis Provenzano, Inc.,* 257 AD2d 378.) III. Though appellant's counsel did not ask for a continuance or adjournment to meet this concocted story, the missing witness charge should have been granted as a matter of law. (*People v Gonzalez,* 68 NY2d 424; *People v Savinon,* 100 NY2d 192; *Heller v Louis Provenzano, Inc.,* 257 AD2d 378.) IV. The trial court misapplied the legal principle applicable to the 9 Bayview Place controversy, thus arriving at an erroneous conclusion. (*Heine v Heine,* 176 AD2d 77; *DeJesus v DeJesus,* 90 NY2d 643; *Price v Price,* 69 NY2d 8; *Majauskas v Majauskas,* 61 NY2d 481; *McKinster v Babcock,* 26 NY 378.) V. The Appellate Division erroneously applied the *Grunfeld* rule to the facts of this case. (*Grunfeld v Grunfeld,* 94 NY2d 696; *McSparron v McSparron,* 87 NY2d 275; *Holterman v Holterman,* 3 NY3d 1.) VI. New York's statutory scheme requires this Court to limit its *Grunfeld* ruling to the special circumstances of the professional license. (*Matter of Excellus Health Plan v Serio,* 2 NY3d 166; *Gilman v Tucker,* 128 NY 190; *Matter of Ahlers v Clement,* 141 App Div 891, 201 NY 592; *Smull v Delaney,* 175 Misc 795; *People ex rel. Sheldon v Board of Appeals of City of N.Y.,* 234 NY 484; *People ex rel. Barnes v Warden of Workhouse,* 127 Misc 224;

*Wait v Van Allen,* 22 NY 319; *Hyatt v Taylor,* 42 NY 258.) VII. Neighboring state courts have recently considered the double-dipping fallacy and have decided its broad application promotes egregious unfairness. (*Grunfeld v Grunfeld,* 94 NY2d 696.) VIII. The double-dipping fallacy has caused state courts substantial difficulty because they have not understood the principle's fundamental flaw. IX. A miscalculation by the trial court resulted in appellant receiving less than her entitled distributive award. X. The Court below erroneously made a determination on appellant Nitza Keane's order to show cause. XI. The Court below erred in assigning credits for the commercial properties. XII. The failure of the trial court to award counsel fees in this contentious divorce action is without basis. XIII. Respondent offered no proof of his separate property claim at the trial level.

*Berman Bavero Frucco & Gouz P.C.,* White Plains (*Howard Leitner* of counsel), for respondent. I. When an income-producing asset is distributed equally, any maintenance awarded from the income of that asset constitutes double counting regardless of the nature of the asset. (*McSparron v McSparron,* 87 NY2d 275; *Grunfeld v Grunfeld,* 94 NY2d 696; *Miness v Miness,* 229 AD2d 520; *Amodio v Amodio,* 70 NY2d 5; *Rice v Rice,* 222 AD2d 493; *Ferraro v Ferraro,* 257 AD2d 596; *Dempster v Dempster,* 236 AD2d 582, 90 NY2d 806; *Matter of Penepent Corp.,* 198 AD2d 782; *L'Esperance v L'Esperance,* 243 AD2d 446; *Matter of Reckson Operating Partnership v Assessor of Town of Greenburgh,* 2 Misc 3d 1005[A], 2004 NY Slip Op 50153[U].) II. New York's statutory scheme does not require limitation of *Grunfeld v Grunfeld* (94 NY2d 696 [2000]) and *McSparron v McSparron*'s (87 NY2d 275 [1995]) prohibition against double counting to professional licenses. (*Gaglio v Molnar-Gaglio,* 300 AD2d 934; *Sodaro v Sodaro,* 286 AD2d 434; *Murphy v Murphy,* 6 AD3d 678.) III. Besides being antithetical to this Court's rulings, the foreign state rulings relied upon by appellant have no relevance to this State's experience. (*McSparron v McSparron,* 87 NY2d 275; *Grunfeld v Grunfeld,* 94 NY2d 696.) IV. The determination involving 9 Bayview Place is not reviewable by this Court; in any event, there is no basis for setting the determination aside. (*Glenbriar Co. v Lipsman,* 5 NY3d 388; *Matter of City of New York [Fifth Ave. Coach Lines],* 22 NY2d 613; *St. Agnes Cemetery v State of New York,* 3 NY2d 37; *Matter of Schilling v Garguilo,* 49 NY2d 817; *People v Savinon,* 100 NY2d 192; *Matter of Tamara B. v Pete F.,* 220 AD2d 318; *Matter of Ballroom Prods. v Abrams,* 96 AD2d 1099; *Matter of Deutsch v Deutsch,*

59 AD2d 741; *Matter of Commercial Structures v City of Syracuse,* 97 AD2d 965; *McGovern v Getz,* 193 AD2d 655.) V. The distributive award was correctly calculated. VI. There was no legal error regarding attorneys' fees. (*Patron v Patron,* 40 NY2d 582.) VII. The trial court failed to award respondent his separate property.

**OPINION OF THE COURT**

ROSENBLATT, J.

In *Grunfeld v Grunfeld* (94 NY2d 696 [2000]) and *McSparron v McSparron* (87 NY2d 275 [1995]), we made clear that in divorce actions a court should not twice count the income associated with a professional license, an intangible asset, when making distributive and maintenance awards. We are now called upon to determine whether this principle extends to the distribution of a tangible, income-producing asset and the subsequent award of maintenance from income deriving from that asset. It does not.

I.

The parties, in their early 60s at the time of trial, were married for 30 years. During the marriage, the wife had no outside employment and the husband was sole shareholder in a real estate entity (FMK Realty, Inc.) with two assets. One of these assets was a parcel leased to a car repair shop, providing monthly rental income. The other was a mortgage note, yielding monthly income.

In 1981, the husband and his two siblings inherited a vacation property in Madison, Connecticut. He held sole title to that property as of trial, through a transfer without consideration* and only as his siblings' designee for tax purposes, making the vacation home his separate property (*see* Domestic Relations Law § 236 [B] [1] [d] [1]) save for any appreciation due to the wife's efforts (*see* Domestic Relations Law § 236 [B] [1] [d] [3]; *Price v Price,* 69 NY2d 8, 17-18 [1986]).

The parties stipulated that, upon divorce, the marital assets should be equally distributed. During trial, the husband's appraiser valued the body shop rental property at $290,000 using

---

* Although the deed suggested that the husband paid his siblings $100,000 for their shares of the property, the courts below found otherwise (*see M'Crea v Purmort,* 16 Wend 460 [1836] [recitation of value in the deed is merely prima facie evidence that consideration was exchanged]). There is no evidence that this amount was in fact paid.

a capitalization of income approach, thus necessarily taking into account the monthly rental income to be received through the lease term. A market value approach valued the property at $324,000. The Madison residence was valued at $1,050,000, or $990,000 more than its value in 1980, just before the husband and his siblings inherited it.

Supreme Court awarded the wife maintenance of $1,292 per month to continue through December 2010 (coinciding with the end of the body shop lease term) and $471 per month thereafter (to equalize the parties' Social Security benefits). In addition, the court granted her a distributive award of $57,600 plus monthly payments of $2,000 through September 2012 (to distribute the value of the mortgage as received over time). The court awarded the marital home ($275,500 by stipulation) to the wife, along with its furnishings. The body shop property went to the husband, as did the vacation home, except the value of the appreciation of the husband's original one-third interest reasonably determined to be due to the wife's efforts.

The Appellate Division modified, over a partial dissent, by deleting the $1,292 monthly maintenance award, reasoning that it derived from impermissible "double counting" of the husband's income from the rental property after that income had been included in the valuation of the previously distributed property (25 AD3d 729 [2d Dept 2006]). The Court also deleted the award of the furnishings in the marital home to the wife, because the record showed that some of the furnishings had been gifts to the husband and therefore did not qualify as marital property. The Court then certified the legal questions to us. We agree as to the furnishings, but disagree as to the maintenance and now remit to Supreme Court.

## II.

In the landmark case of *O'Brien v O'Brien* (66 NY2d 576 [1985]), we held that professional licenses could constitute marital property subject to distribution at divorce. Subsequently, courts began allowing such licenses to "merge" into the licensee's career so they would not be considered marital property. We rejected this doctrine in *McSparron v McSparron* (87 NY2d 275, 285 [1995]) "in favor of a commonsense approach that recognizes the ongoing independent vitality that a professional license may have and focuses solely on the problem of valuing that asset in a way that avoids duplicative awards." In other words, although the license cannot merge into or reemerge

from the holder's career, the value of the license should not overlap with the value of other marital assets derived from it or maintenance awards based on the income it produces.

We applied this prohibition against double counting for the first time in *Grunfeld v Grunfeld* (94 NY2d 696 [2000]). In that case, we modified and remitted to Supreme Court after the Appellate Division improperly decided that half the value of the defendant's law license should have been distributed to the plaintiff in addition to half the value of the defendant's law practice.

■ Here, the Appellate Division cited *Grunfeld* and *McSparron* for the proposition that *any* income-producing asset distributed as marital property may not also be considered a source of income for maintenance purposes. Citing those two cases, the Court vacated Supreme Court's maintenance award because a portion of the husband's income, considered in determining maintenance, derived from the rental of the body shop property awarded to the husband during distribution. We now reverse that aspect of the Appellate Division's order and remit for Supreme Court to reinstate its maintenance determination.

We do not see why an inquiry as to double counting should depend on the valuation method used. After all, any valuation of an income-producing property will necessarily take into account the income-producing capacity of that property. To prevent any income derived from any income-producing property from being "double counted" would, therefore, significantly limit the trial court's considerable discretion in equitably distributing marital property and awarding maintenance. Significantly, we have already differentiated between a professional license and tangible income-producing property, because

> "where a professional license is at issue, '[t]he asset is totally indistinguishable and has no existence separate from the projected professional earnings from which it is derived' (*Grunfeld v Grunfeld*, 94 NY2d 696, 704 [2000]). Hence, a trial court must convert the enhanced earnings attributable to the license into a monetary marital asset to achieve equitable distribution. In contrast, a court can transfer title to real or personal property in order to equitably distribute the asset" (*Holterman v Holterman*, 3 NY3d 1, 9 n 5 [2004]).

We agree with dissenting Justice Goldstein that this distinction applies here.

Double counting may occur when marital property includes *intangible* assets such as professional licenses or goodwill, or the value of a service business. As we said in *Grunfeld*, "[i]n contrast to passive income-producing marital property having a market value, the value of a professional license as an asset of the marital partnership is a form of human capital dependant upon the future labor of the licensee" (94 NY2d at 704). It is only where "[t]he asset is totally indistinguishable and has no existence separate from the [income stream] from which it is derived" (*id.*) that double counting results.

Here, the rental property was split between the parties for distributive purposes. The rental income from that property was then considered in determining maintenance. The property will continue to exist, quite possibly in the husband's hands, long after the lease term has expired, as a marketable asset separate and distinguishable from the lease payments. The mortgage payments, in contrast, were properly distributed as an asset and not counted for maintenance purposes because the payments themselves *were* the marital asset.

### III.

We agree with both the Appellate Division majority and dissent that Supreme Court must reconsider the distribution of the furnishings in the marital residence. The husband argued that some of the furnishings were gifts he received from his parents and therefore his separate property (*see* Domestic Relations Law § 236 [B] [1] [d] [1], [3]), but the trial court did not address this contention. If indeed some of these items are the husband's separate property, they should not have been distributed to the wife.

The wife also makes numerous allegations and arguments that the husband and his trial attorney made false representations to Supreme Court and that the fact findings of Supreme Court and the Appellate Division were erroneous. As a court of law we are precluded from reviewing affirmed findings of fact unless there is a question of legal sufficiency of the evidence (NY Const, art VI, § 3; *see also e.g. Glenbriar Co. v Lipsman*, 5 NY3d 388, 392 [2005]). As the record here is sufficient to support the affirmed facts and the courts below did not abuse their discretion in refusing to award the wife attorneys' fees (Domestic Relations Law § 237; *cf. O'Shea v O'Shea*, 93 NY2d 187 [1999]), we cannot further address these points.

Accordingly, the order of the Appellate Division should be modified, with costs to plaintiff, by remitting to Supreme Court for further proceedings in accordance with this opinion, and as so modified, affirmed. The certified question should be answered in the negative.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur.

Order modified, etc.